MARIA JANE HALSTEAD

v.

RICHARD B. WESTERVELT et al.

Lands were devised on condition that the devisee support the testator's grandson Benjamin during his natural life. The complainant, alleging that after the devisee's death she furnished Benjamin with support &c., and recovered a judgment at law therefor, filed her bill for a decree declaring the judgment a lien upon the property, and directing that the property be sold to pay it.—*Held*, that the suit could not be maintained; that the bill could not be sustained, as a creditor's bill, to subject to payment of her judgment the lands devised in the hands of the devisee's heirs-at-law, because the trust did not proceed from the judgment debtor; and that the complainant did not show herself entitled to equitable subrogation.

Bill for relief.   On general demurrer.

*Mr. P. W. Stagg,* for complainant.

*Mr. B. A. Vail* and *Mr. James Flemming,* for the demurrants.

THE CHANCELLOR.

This is a creditor's bill.   It states that Benjamin R. Westervelt was, on the 10th of April, 1863, the day of his death, seized in fee of two tracts of land described in the bill; that by his will he devised to his son Lawrence, in fee, his homestead farm, including the grist-mill and fixtures, and water privileges thereto belonging; also, a tract of land, which the testator purchased of the administrator of Albert Z. Van Saun, deceased; also, a lot or tract of land which he purchased of Jacob I. Demarest, and whereon the testator's son Richard resided at the date of the will, and also a wood lot—all of which property was devised to Lawrence, subject to the testator's wife's joint equal use and ownership thereof with him for life; and that by the will the testator then ordered and directed that, in consideration of those devises to Lawrence, the latter should fully support and maintain with

Halstead *v.* Westervelt.

meat, drink, clothing, washing, lodging, mending and medical attendance, the testator's grandson Benjamin for and during the term of his natural life. It states, also, that Lawrence accepted the provisions of the will, and in pursuance thereof took possession of the property (the two tracts) described in the bill, and provided the grandson Benjamin with meat, drink, clothing, washing, lodging, mending and medical attendance, up to the time of his (Lawrence's) death. The bill further states that Lawrence died intestate June 25th, 1879, in possession of the two tracts; that his heirs-at-law were his brothers, Richard R. Westervelt and James B. Westervelt, and his sister, Ann Van Winkle, widow, and that after his death they took possession of those tracts and have had possession of them ever since, and still have such possession, and that the property has been rented by them to one Daniel Van Winkle, and that, as the complainant believes, they receive a rental of $250 a year for it; that since Lawrence's death the complainant has furnished the grandson Benjamin with meat, drink, clothing, washing, lodging, mending and medical attendance, and that, on the 18th of April, 1885, she recovered a judgment therefor in the Bergen circuit court against him for $1,081.61; that execution thereon has been returned unsatisfied, and that the complainant has been informed and believes that he has no property out of which the judgment could be collected, except the interest which he may have in the property described in the bill. The bill further states that Richard R. Westervelt and James B. Westervelt, brothers of Lawrence, and Ann Van Winkle claim to have some interest in that property, but that the complainant insists that she herself has a lien upon the premises, and that whatever interest they have or claim is subject to the lien of her judgment; and it alleges that she has frequently requested them to pay her her judgment, but they have refused to do so. The prayer is that the judgment may be declared to be a lien on the two tracts described in the bill, and that they may be sold to pay the judgment. There is also a prayer for general relief. Two of the defendants have filed a general demurrer. They insist that there is no charge or lien under the

will, in favor of Benjamin, upon the land devised to Lawrence, and that if there was one it was only for the lifetime of the latter.

It is evident that the testator intended to create a charge upon the land in favor of Benjamin. Words of recommendation, request, entreaty, wish or expectation, addressed to a devisee or legatee, will sometimes make him a trustee for the person or persons in whose favor such expressions are used. Here there is more; the words used are not precatory but imperative. The language is, "I order and direct that, in consideration of the devises to my son Lawrence, he (my said son Lawrence) shall fully support" &c. That the testator meant by this language to govern the conduct of the devisee, there is no room to doubt. He not only orders and directs him to support Benjamin, but he declares that such support is the consideration and condition upon which the devises are made. He unquestionably intended to create a trust in favor of Benjamin. In *Wallington* v. *Taylor*, *Sax. 314*, a testator bequeathed to his daughter a sum of money, to be paid to her by his son out of the estate given to him by the will. The legacy to her was held to be a charge upon the son's estate in the land devised to him.

In *Broad* v. *Bevan, 1 Russ. 511 n.*, a testator, having bequeathed various legacies, among others an annuity to his daughter for her life, directed his son (whom he made executor) to take care of and provide for her, and "subject as aforesaid" gave him the residue of his real and personal estate. It was held that she was entitled to a provision out of the residue in addition to her annuity. Lawrence, in accepting the devises, accepted them subject to the charge. Nor can there be any question that the charge was to last for Benjamin's, and not merely for Lawrence's lifetime. The fact that it was to last for the lifetime of the former, who might, and in fact did outlive the latter, is evidence of an intention to charge the land; for, otherwise, the provision might have been wholly defeated by Lawrence's conveying away the property and dying insolvent immediately after the devises took effect.

It is clear that the bill cannot be sustained as a creditor's bill. Its aim is not to reach property of the judgment debtor which

cannot be reached at law, but to establish a lien in favor of the complainant, for her judgment, upon property owned by the defendants, but subject to a trust for the benefit of the judgment debtor—a charge for his support. The trust was not created by the judgment debtor himself, nor did the fund proceed from him, but the former was created by and the latter proceeded from his grandfather. Such trust property cannot be reached to be applied to the satisfaction of the judgment (*Hardenburgh* v. *Blair*, *3 Stew. Eq. 645*), unless the income exceeds $4,000. *P. L. of 1880 p. 274.*

Nor is the complainant, under the bill, entitled to the benefit of the charge by equitable subrogation. For aught that appears, she is a mere volunteer. It is not even alleged in the bill that the heirs of Lawrence have refused or neglected to furnish the support &c. Benjamin might maintain a suit in equity to enforce the charge if the circumstances are such as to entitle him to the aid of the court; but, on the statements of the bill, the complainant cannot do so. The demurrer will be sustained.